757 P.2d 112

**MARICOPA COUNTY, Home Indemnity Company, a corporation; C & D Pipeline, Inc., a corporation, Plaintiffs/Appellants,**

v.

**FEDERAL INSURANCE COMPANY, a corporation, Defendant/Appellee.**

No. 2 CA–CV 88–0154.

Court of Appeals of Arizona, Division 2, Department A.

May 19, 1988.

Robbins & Green, P.A. by William H. Sandweg III and Paul J. McGoldrick, Phoenix, for plaintiffs/appellants.

Crampton, Woods, Broening & Oberg by James R. Broening and Kenneth C. Miller, Phoenix, for defendant/appellee.

## OPINION

HATHAWAY, Judge.

A cross-motion for summary judgment was granted in favor of appellee, Federal Insurance Co. (Chubb), and against appellants Maricopa County and Home Indemnity Co. At issue is whether an excess liability carrier must pay a claim falling within the coverage of the primary insurer where the primary insurer is insolvent. We agree with the trial court and affirm its ruling that the excess carrier is not obligated to pay solely because the primary carrier is insolvent.

## FACTS

At the time of his death on August 5, 1983, William W. Wiesermann was employed by Roadjammers Machinery, Inc., a trucking company. Roadjammers was engaged in transporting dirt to a Maricopa County worksite from a separate project site controlled by C & D Pipeline. Wiesermann was electrocuted when the bed of his dump truck came into contact with a high voltage line at the dumpsite. At the time of the accident, Maricopa County was self-insured, C & D had primary liability insurance with Home Indemnity, and Roadjammers had a primary insurance policy for $500,000 with Mission Insurance Company, and a $5 million excess umbrella policy with Chubb. Mission has been found insolvent within the meaning of the Arizona insurance laws.

In the underlying tort action brought by Wiesermann's widow and children against Maricopa County and C & D Pipeline, plaintiffs alleged that the defendants had negligently failed to discharge duties owed to Wiesermann, thereby proximately causing his death. That action was settled before trial for $120,000, consisting of equal contributions by Maricopa County, Home Indemnity (on behalf of C & D Pipeline) and Chubb. In their cross-motions for summary judgment, both appellee and appellants requested that the other compensate them for their $40,000 contributions. Appellants took the position that because Mission was insolvent, Chubb should step into its shoes and become the primary insurer.

Appellants raise three issues on appeal: (1) whether the trial court erred in granting Chubb's motion for summary judgment because appellants were "using" the Roadjammers' vehicle at the time of the accident, and were thus omnibus insureds under the Roadjammers' policy; (2) whether the trial court erred in holding that Chubb was not the primary insurer of the Road-

jammers' vehicle, and (3) whether the Arizona Financial Responsibility Act was violated by not holding Chubb as primary insurer of the Roadjammers' vehicle.

■ We resolved this case primarily on the second issue raised by appellants. Appellants devote a substantial portion of their argument to the contention that they are additional insureds under the Mission policy and, because Mission is insolvent, Chubb must take Mission's place as primary insurer and pay the entire $120,000 settlement. We agree with the trial court that Chubb does not become the primary insurer and it is thus unnecessary for us to address the question whether appellants were additional insureds under the Mission policy. Summary judgment in favor of Chubb was appropriate, as only one inference could be drawn from the facts, entitling Chubb to summary judgment as a matter of law. *Giovanelli v. First Federal Savings and Loan Association of Phoenix,* 120 Ariz. 577, 587 P.2d 763 (App.1978).

## CHUBB AS PRIMARY INSURER

Because Chubb had issued an excess umbrella policy to Roadjammers, it was not obliged to provide coverage until the primary policy limits of $500,000 had been paid. Appellants argue that by virtue of Mission's insolvency, Chubb must step into Mission's place and become the primary insurer, regardless of whether any or all of the $500,000 primary policy amount has been paid. Exhaustion of the $500,000 amount is a fixed policy requirement; it was not satisfied and this fact cannot be altered by language in other policies. The Chubb policy itself provides that:

The Company shall be liable only for the ultimate net loss the excess of the greater of the insured's underlying limit or retained limit defined as:

(a) Underlying limit—an amount equal to the limits of liability indicated beside the

underlying insurance listed in the schedule of underlying insurance, ...

The Mission policy is the underlying policy referred to, the limits of which had not been satisfied so as to require Chubb's excess coverage to go into effect.

Appellants argue that the decision of the trial court violates the statutory scheme set forth in A.R.S. § 20-673(C).[1] We disagree. Nowhere in the statutory language is it suggested that various relationships among insurers are changed because of the insolvency of one insurer. See *St. Vincent's Hospital and Medical Center v. Insurance Co. of North America,* 117 Misc. 2d 665, 457 N.Y.S.2d 670 (1982). We do not interpret A.R.S. § 20-673(C) to mean that by exhausting "all rights under other applicable coverage" the insured may transform the character of the other coverage into something other than that expressed in the policy in unambiguous terms.

In the instant case, no amount greater than the coverage afforded in the primary policy has been paid, as required by the excess insurance contract. The insolvency of the primary insurer does not create liability for the excess insurer. To hold otherwise, would be tantamount to rewriting the contract to interpret the excess coverage beyond its plain meaning. An insured pays a reduced premium to the excess carrier expressly because that carrier will be obligated to pay a claim only after a certain amount has been paid by the primary insurer. *Transport Indemnity Co. v. Carolina Casualty Insurance Co.,* 133 Ariz. 395, 652 P.2d 134 (1982).

It is unfortunate that the primary insurer in the present case is insolvent; however, that does not justify holding Chubb liable for an obligation for which it never contracted. Any other interpretation would negate the intent of all parties upon contracting. It is not appropriate for any court to defeat the reasonable expectations of the parties, particularly when no statute, public policy, regulation or constitutional

1. A.R.S. § 20-673(C) provides:
   C. Where more than one policy may be applicable, a policy issued by the insolvent insurer shall be deemed to be excess coverage. The claimant shall be required to exhaust all

   rights under other applicable coverage or coverages. Any amount payable on a covered claim shall be reduced by the amount of such recovery under other applicable insurance.

mandate is violated in honoring those expectations. *Werner Industry v. First State Insurance*, 217 N.J.Super. 436, 526 A.2d 236, cert. granted 108 N.J. 585, 531 A.2d 1357 (1987). When interpreting and construing insurance contracts in Arizona, the intention of the parties should control. *United Services Automobile Assn. v. Empire Fire and Marine Insurance Co.*, 134 Ariz. 64, 653 P.2d 712 (App.1982).

■ Appellants further argue that if we affirm the granting of Chubb's motion, the Arizona Financial Responsibility Act, A.R.S. § 28–1232(A), will be violated in that the Roadjammers' vehicle will be uninsured up to the first $500,000. We disagree. Both the purpose of the Act and the Chubb policy language can be fulfilled if the Home Indemnity and Maricopa County coverages are exhausted first, before turning to the guaranty fund or the Chubb policy.

Appellee's request for attorney's fees on appeal will be granted upon compliance with Ariz.R.Civ.App.P. 21(c), 17A A.R.S.

Affirmed.

LACAGNINA, C.J., and HOWARD, P.J., concur.