7 P.3d 966

Murray JOHNSON, Jr., a single man, Shiloh Ranch, Murray Johnson, III, a single man, Ernest E. Parker and Mary N. Parker, surviving parents of Timothy Parker, Plaintiffs–Appellants,

v.

The CONTINENTAL INSURANCE COMPANY, dba CNA Insurance, Defendant–Appellee.

No. 1 CA–CV 99–0354.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 15, 2000.

Review Denied January 9, 2001.

Gilcrease, Richau & Brown By Glynn W. Gilcrease, Jr., Tempe, for Plaintiffs–Appellants Johnson.

Robbins & Green, P.A. By Philip A. Robbins, Phoenix, for Plaintiffs–Appellants Parker.

Jones, Skelton & Hochuli By Jeffrey T. Bergin and David C. Lewis, Donald L. Myles, Jr., Phoenix, for Defendant–Appellee.

## OPINION

GARBARINO, Judge.

¶ 1 The Ranchers/Farmers Deluxe (RFD) comprehensive insurance policy at issue in this appeal includes, among other coverages, primary motor vehicle coverage and umbrella coverage. We hold that an insurer is not required by Arizona Revised Statutes Annotated (A.R.S.) section 20–259.01 (Supp.1999) [1] to offer underinsured motorist coverage in an amount equal to the policy limits of the um-

1. The version of A.R.S. section 20–259.01 in effect at the time of the issuance of the policy in question (March 5, 1995) and the accident at issue (March 17, 1995) was A.R.S. section 20–259.01 (Supp.1994).

brella coverage. We affirm the trial court's judgment in the insurer's favor.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 A vehicle driven by Sandra Rupelt crossed the center line and collided with a car driven by the appellant, Murray Johnson, III. One of Johnson's passengers was killed, and Johnson and the four other passengers were injured. The collective damages of Johnson and the dead and injured passengers exceed $1,000,000. Rupelt's insurer paid the policy limit of $30,000 to the accident victims.

¶ 3 The car driven by Johnson was insured under an RFD policy issued by the appellee, Continental Insurance Company (CNA), to Murray Johnson, Jr., dba Shiloh Ranch. The RFD policy covered the Johnsons for a variety of commercial and personal risks, including both primary automobile coverage and $1,000,000 in umbrella coverage.

¶ 4 CNA paid the $500,000 limit of underinsured motorist (UIM) coverage under the automobile coverage of the RFD policy. The appellants (Johnson, Shiloh Ranch, and Ernest and Mary Parker as the surviving parents of Timothy Parker) claimed UIM benefits of $1,000,000 under the RFD policy's umbrella coverage. When CNA denied the additional benefits, the appellants sought a declaratory judgment to establish coverage and also sought damages for breach of contract and bad faith.

¶ 5 The appellants moved for summary judgment, arguing that CNA was obligated to pay $1,000,000 in UIM benefits because it had failed to make a written offer of UIM coverage as required by A.R.S. section 20–259.01, thus imputing the UIM coverage into the RFD policy. They asserted that the need for such an offer was not obviated under A.R.S. section 20–259.01(K)[2] because the RFD policy contained both primary automobile coverage and the umbrella provision.

¶ 6 CNA opposed the appellants' motion and filed its own motion for summary judgment. CNA argued that their RFD catastrophe liability or umbrella coverage was purely excess, separate and apart from the underlying auto liability insurance. Noting that the catastrophe coverage had a separate, minimal premium, provided $1,000,000 in coverage above the underlying limits, and had separate requirements for coverage, CNA asserted that A.R.S. section 20–259.01(K) expressly relieved insurers of any obligation to offer UIM coverage in an amount equal to excess/ umbrella coverage.

¶ 7 The trial court granted summary judgment in CNA's favor and denied the appellants' motion for summary judgment. The trial court reasoned that although the RFD policy combined a variety of different coverages into one document under one cover, the insured knew that he was purchasing separate coverages because the primary vehicle coverage was separate from the umbrella coverage. The court ruled that an insurer who puts both types of coverage into one policy can still benefit from the exemption of A.R.S. section 20–259.01(K) as to the umbrella coverage portion of the policy. Following the trial court's denial of their motion for new trial, the appellants appealed. We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

## DISCUSSION

■ ¶ 8 The appellants argue that A.R.S. section 20–259.01(K) did not relieve CNA of the duty to make a written offer of UIM coverage because the RFD policy issued to Murray Johnson, Jr. and Shiloh Ranch provides primary motor vehicle insurance along with umbrella coverage. They interpret this statute to apply only when the umbrella coverage is provided in a policy separate from the primary coverage. CNA responds that the catastrophe liability policy is a separate umbrella policy and not a primary automobile policy; thus, CNA argues, it was not re-

2. At the time the policy was issued, the relevant subsection was A.R.S. section 20–259.01(I) (Supp.1994). Subsection (I) was later redesignated as subsection (K). *See* A.R.S. § 20– 259.01(K) (Supp.1998). Currently, this subsection is labeled (L). *See* A.R.S. § 20–259.01(L) (Supp.1999).

quired to offer UIM coverage equal to the limits of the catastrophe coverage.

¶ 9 Interpretation of an insurance contract is a question of law that we decide independently of the trial court's legal conclusions. *See Thomas v. Liberty Mut. Ins. Co.,* 173 Ariz. 322, 324, 842 P.2d 1335, 1337 (1992). Similarly, because the interpretation of a statute is a question of law, we review de novo the applicable statute. *See Libra Group, Inc. v. State,* 167 Ariz. 176, 179, 805 P.2d 409, 412 (1991).

¶ 10 Under A.R.S. section 20–259.01(B), UIM coverage must be available and offered for certain policies:

> Every insurer writing automobile liability or motor vehicle liability policies shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsured[3] motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.

In 1993, the legislature added an exception to this requirement. *See* 1993 Ariz. Sess. Laws, ch. 207, § 1. At the time the RFD policy was issued to the Johnsons, the exception appeared as A.R.S. section 20–259.01(I), and later as subsection (K), as cited by the parties in the trial court and in their appellate briefs. It currently appears as subsection (L), but the text has not been changed. It provides as follows:

> An insurer is not required to offer, provide or make available coverage conforming to this section in connection with any general commercial liability policy, excess policy, umbrella policy or other policy that does not provide primary motor vehicle insurance for liabilities arising out of the ownership, maintenance, operation or use of a specifically insured motor vehicle.

¶ 11 If CNA is correct in its assertion that A.R.S. section 20–259.01(K) exempted it from the requirement of offering UIM coverage in an amount up to the limit of the catastrophe liability coverage, it correctly denied UIM benefits of $1,000,000 to the appellants. However, if the appellants are correct that the statute required CNA to offer the increased UIM benefits and, as is undisputed, CNA did not do so, a $1,000,000 UIM limit would be imputed into the policy. *See Ormsbee v. Allstate Ins. Co.,* 176 Ariz. 109, 113, 859 P.2d 732, 736 (1993); *St. Paul Fire and Marine Ins. Co. v. Gilmore,* 168 Ariz. 159, 167, 812 P.2d 977, 985 (1991).

¶ 12 To be exempt from the UIM offer requirement, the policy in question must be a general commercial liability policy, excess policy, umbrella policy, or other policy that does not provide primary motor vehicle insurance. CNA characterizes its catastrophe liability coverage as an umbrella policy.

¶ 13 Umbrella coverage "applies when the *same insured* has purchased underlying coverage for the *same risk.* This type of excess (umbrella) policy provides, for a modest premium, coverage against catastrophic losses that exceed the limits of the underlying coverage." *Gilmore,* 168 Ariz. at 162, 812 P.2d at 980; *see also Maricopa County v. Federal Ins. Co.,* 157 Ariz. 308, 310, 757 P.2d 112, 114 (1988) (holding that an insured pays a reduced premium to an excess carrier because that carrier is obligated to pay only after a certain amount has been paid by the primary insurer); *Beck v. Budget Rent–A–Car,* 283 Ill.App.3d 541, 218 Ill.Dec. 809, 669 N.E.2d 1335, 1338 (1996) (holding that an umbrella policy provides liability coverage to protect an insured from judgments in excess of the amount of the insured's primary coverage; primary coverage must exist before umbrella coverage is issued). Umbrella coverage benefits are paid only after the primary coverage limits of the same insured have been exhausted. *See Gilmore,* 168 Ariz. at 162, 812 P.2d at 980.

¶ 14 We find that the CNA catastrophe liability coverage issued in the RFD policy meets the definition of an umbrella policy. The "RFD Catastrophe Liability Coverage

---

3. The legislature replaced the word "underinsurance" with "underinsured" in 1996. *See* 1996 Ariz. Sess. Laws, ch. 164, § 1.

Part Declarations" provide that the underlying insurance must include personal liability coverage of $500,000 for each occurrence and $1,000,000 for the general aggregate, and automobile liability coverage of bodily injury in the amount of $250,000 for each person and $500,000 for each accident or occurrence. Under the catastrophe liability coverage, CNA agrees to pay the "net loss" in excess of the "retained limit" that the insured is legally obligated to pay as damages due for an injury. "Net loss" is defined as "the sums actually paid or payable in cash due to a claim for which the 'insured' is liable either by a settlement to which we agreed or a final judgment." "Retained limit" means the limits of underlying insurance. Thus, consistent with the definition of an umbrella policy, the catastrophe liability coverage applies to covered losses suffered by a person or entity insured under both an underlying and a catastrophe liability policy and comes into play only when the catastrophic loss exceeds the limits of the underlying coverage.[4] In addition, the premium for the catastrophe liability coverage was modest; the premium for the catastrophe coverage was $375 annually as compared to an annual premium of $4,125 for the commercial auto coverage.

¶ 15 Nevertheless, the appellants argue that the primary automobile coverage and the umbrella coverage are not separate, freestanding policies, but are both merely integrated parts of the RFD policy. Accordingly, they conclude that because the RFD policy includes primary automobile coverage, CNA was required to offer UIM coverage up to the $1,000,000 limit of the umbrella coverage.

¶ 16 We disagree. First, the "Certificate of Insurance" for the coverages at issue certifies that four policies of insurance were issued to Murray Johnson, Jr. and Shiloh Ranch. These included a commercial general liability policy, an automobile liability policy, a property policy, and an umbrella form excess liability policy. The certificate states that "the policies of insurance listed below have been issued to the insured" and "the insurance afforded by the policies described

herein is subject to all the terms, exclusions and conditions of such policies." Thus, although all of those policies are combined in the RFD policy under the same policy number, they are referred to as different policies. In addition, the "RFD Catastrophe Liability Coverage Part" has a declarations page separate from other coverages in the RFD policy and has its own fifteen-page pagination scheme.

¶ 17 Second, the catastrophe liability coverage part of the policy requires underlying insurance to be in place. Thus, the policy contemplates separate coverage that is primary and must be exhausted before the excess benefits afforded by the catastrophe liability coverage come into play. As we stated in *Petrusek v. Farmers Insurance Co. of Arizona*, it is clear from the plain language of A.R.S. section 20–259.01(K) that its exception "applies as long as the policy is not intended to be the first or only source of insurance coverage." 193 Ariz. 552, 556, ¶ 15, 975 P.2d 142, 146 (1998), *review denied* (1999). The RFD catastrophe coverage clearly is not intended to provide the primary motor vehicle insurance. In fact, the terms of the umbrella policy require that there must be primary vehicle coverage in force and that the limits of the primary vehicle policy must be exhausted before the umbrella policy comes into play.

¶ 18 We recognize that CNA might have avoided the issue that confronts it in this case by issuing the umbrella coverage in an entirely separate and distinct policy. Instead, by combining the umbrella coverage with other forms of coverage in one "comprehensive insurance policy," CNA faces the literal argument that, pursuant to A.R.S. section 20–259.01(B), it must offer UIM coverage "in limits not less than the liability limits" for the entire "policy." We reject this literal interpretation, however, as contrary to the clear purpose of the exception embodied in A.R.S. section 20–259.01(K).

¶ 19 The fact that four different insurance policies or coverages are issued under the same policy number does not transform the umbrella coverage into primary coverage

---

4. Under specific terms of the catastrophe liability policy, the insurance does not apply to liability imposed on the insured or the insured's insurer under uninsured or underinsured motorists laws.

subject to the statutory UIM offer requirement. The umbrella coverage included in the RFD policy clearly falls within the exception of A.R.S. section 20–259.01(K) and within the legislature's intent to exempt such excess coverage from UIM requirements that are applicable to primary motor vehicle insurance. Therefore, we conclude that the trial court correctly determined that A.R.S. section 20–259.01(K) applied to exempt CNA from offering UIM coverage of $1,000,000 and affirm the judgment in favor of CNA.

¶ 20 Finally, CNA requests attorneys' fees and costs on appeal pursuant to A.R.S. section 12–341.01(A) (Supp.1999) and A.R.S. section 12–331 (1992). In our discretion, we deny this request.

CONCURRING: MICHAEL D. RYAN, Presiding Judge, and NOEL FIDEL, Judge.