OPINION
{¶ 1} Appellant Argonaut Great Central Insurance Company ("Argonaut") appeals the decision of the Holmes County Court of Common Pleas that granted Appellee Ricky Lee Sheaffer's, et al., cross-motion for summary judgment and denied its motion for summary judgment. The following facts give rise to this appeal.
 {¶ 2} This lawsuit arises out of an accident that occurred on June 2, 2000. On this date, Michael Haynes drove his vehicle left of center and struck a vehicle driven by Judy Kay Sheaffer. Sheaffer died as a result of the injuries she sustained in the accident. Sheaffer is survived by her husband, Appellee Ricky Lee Sheaffer, and their eight minor children. As the duly appointed Administrator of Judy Kay Sheaffer's estate, Appellee Ricky Lee Sheaffer filed this wrongful death lawsuit on behalf of his family.
 {¶ 3} The only potential sources of UM coverage are policies issued to the decedent's employer, Rodhe's Market, Inc. Appellees seek coverage under these policies pursuant to the Ohio Supreme Court's decision in Scott-Pontzer v. Liberty Mut. Fire Ins. Co.[1] At the time of the accident, Rodhe's Market, Inc. had coverage under three insurance policies: a commercial auto policy issued by Westfield Insurance Company; a commercial general liability policy (ACGL@) issued by Argonaut with limits of $1,000,000; and an umbrella policy also issued by Argonaut with limits of $1,000,000. Argonaut did not offer UM/UIM coverage under either the CGL policy or the umbrella policy and Rhode's Market, Inc. did not reject UM/UIM coverage under either policy.
 {¶ 4} Subsequently, appellees settled their claims with Westfield Insurance Company. Following this settlement, appellees and Argonaut stipulated to the following:
 {¶ 5} "Decedent, Judy Kay Sheaffer, and Decedent's surviving spouse, Ricky Lee Sheaffer, and eight minor children, * * *, suffered damages as a result of Decedent's wrongful death, which damages, after partial payment thereof through settlement with Westfield, amount to an additional $525,000." Stipulations of Fact, May 10, 2002, at 15.
 {¶ 6} On April 19, 2002, Argonaut filed its motion for summary judgment. Thereafter, Appellees filed a cross-motion for summary judgment on May 10, 2002. The trial court issued its judgment entry on August 15, 2002, granting appellees' cross-motion for summary judgment and denying Argonaut's motion for summary judgment. The trial court concluded that both the CGL and umbrella policies contained $1,000,000 of UM coverage by operation of law; that appellees and appellees' decedent were insureds under the CGL and umbrella policies; that appellees were entitled to a judgment for the stipulated amount of additional damages and that appellees were also entitled to prejudgment interest from the date Argonaut erroneously denied coverage. Judgment Entry, Aug. 15, 2002.
 {¶ 7} Argonaut timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 {¶ 8} "I. The trial court erred by determining the argonaut commercial general liability policy contains $1,000,000 of underinsured motorists coverage as a matter of law according to R.C. 3937.18.
 {¶ 9} "II. The trial court erred by determining the argonaut umbrella policy contains $1,000,000 of underinsured motorists coverage as a matter of law according to R.C. 3937.18.
 {¶ 10} "III. The trial court erred by determining that appellees and appellees' decedent were insureds under the argonaut policies.
 {¶ 11} "IV. The trial court erred by granting appellees $525,000 of damages.
 {¶ 12} "V. The trial court abused its discretion by granting prejudgment interest from November 14, 2001 rather than the date of the summary judgment decision."
"Summary Judgment Standard"
 {¶ 13} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35, 36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 {¶ 14} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."
 {¶ 15} Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citingDresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107. It is based upon this standard that we review Argonaut's assignments of error.
 I {¶ 16} In its First Assignment of Error, Argonaut contends the trial court erred when it determined its CGL policy contains $1,000,000 of UM coverage, as a matter of law, pursuant to R.C. 3937.18. We agree.
 {¶ 17} In its judgment entry, the trial court found, based upon precedent from this court, that the CGL policy is a motor vehicle policy as defined in the H.B. 261 version of R.C. 3937.18(L)(1). Judgment Entry, Aug. 15, 2002, at 2. The trial court specifically referred to this court's decision in Burkhart v. CNA Ins. Co., Stark App. No. 2001CA00265, 2002-Ohio-903, wherein we held that since the CGL policy provided coverage for a limited form of motor vehicles, coverage arose by operation of law because Continental failed to offer UM/UIM coverage under the CGL policy. Id. at 10. We note this court recently concluded, inSzekeres v. State Farm and Cas. Co., Licking App. No. 2001CA00117, 2002-Ohio-5989, that our previous decisions in Burkhart, supra, and Coxv. State Farm Fire and Cas. Co., Licking App. No. 2001CA00117, 2002-Ohio-3076, incorrectly concluded that a "valet parking" and "mobile equipment" provisions[2], in a general liability policy, transformed such policy into a motor vehicle liability policy. Szekeres at 6.
 {¶ 18} Argonaut maintains its CGL policy did not serve as proof of financial responsibility for motor vehicles specifically identified in the policy and therefore, it did not have to offer UM/UIM coverage. In support of its argument, Argonaut refers to the Ohio Supreme Court's decision in Ross v. Farmers Ins. Grp. of Cos., 82 Ohio St.3d 281,1998-Ohio-381, wherein the Court held:
 {¶ 19} "For the purpose of determining the scope of coverage of an underinsured motorist claim, the statutory law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties." Id. at syllabus.
 {¶ 20} Argonaut contends it contracted with Rodhe's Market, Inc., for the CGL policy, on December 26, 1999, and therefore, the law in effect on this date governs the interpretation of the CGL policy. The law in effect, on this date, was the version of R.C. 3937.18 as amended by S.B. 57. R.C. 3937.18, as amended by S.B. 57, defines "automobile liability or motor vehicle policy of insurance" as:
 {¶ 21} "(1) Any policy of insurance that serves as proof of financial responsibility, as proof of financial responsibility is defined by division (K) of 4509.01 of the Revised Code, for owners or operators of the motor vehicles specifically identified in the policy of insurance.
 {¶ 22} "(2) Any umbrella liability policy of insurance written as excess over one or more policies described in division (L)(1) of this section."
 {¶ 23} Argonaut maintains that based upon the above definition of "automobile liability or motor vehicle policy of insurance," the CGL policy it issued to Rodhe's Market, Inc. does not meet this definition. Argonaut reaches this conclusion because the CGL policy does not serve as proof of financial responsibility as defined in R.C. 4509.01 and no motor vehicles were specifically identified in the policy. Thus, Argonaut concludes it had no duty, under R.C. 3937.18(A), to offer UM/UIM coverage when it issued the CGL policy to Rodhe's Market, Inc.
 {¶ 24} In response, appellees maintain the 1998 version of the CGL policy applies and therefore, the H.B. 261 version of the statute is applicable. In reaching this conclusion, appellees rely upon the Ohio Supreme Court's decision in Wolfe v. Wolfe, 88 Ohio St.3d 246,2000-Ohio-322, wherein, the Court explained:
 {¶ 25} "* * *[P]ursuant to R.C. 3937.18(A), every automobile liability insurance policy issued in this state, must have, at a minimum, a guaranteed two-year policy period during which the policy cannot be altered except by agreement of the parties and in accordance with R.C. 3937.30 to 3937.39. We further hold that the commencement of each policy period mandated by R.C. 3937.31(A) brings into existence a new contract of automobile insurance, whether the policy is categorized as a new policy of insurance or a renewal of an existing policy. Pursuant to our decision in Ross * * *, the statutory law in effect on the date of issue of each new policy is the law to be applied." Id. at 265-266.
 {¶ 26} Argonaut initially issued the CGL policy to Rodhe's Market, Inc. on December 26, 1990, and despite the annual renewals, under Wolfe, the insurance contract only effectively came into existence at each subsequent two-year renewal date. Therefore, the CGL policy issued December 26, 1998, was in effect on the date of the accident and the applicable law is the H.B. 261 version of R.C. 3937.18. Appellees further conclude the Ohio Supreme Court's decision in Selander v. Erie Ins. Grp., 85 Ohio St.3d 541, 1999-Ohio-287 applies and the coverage, in the CGL policy, for "hired" and "non-owned" vehicles makes the policy a motor vehicle liability policy. Therefore, Argonaut was required to offer UM/UIM coverage when it issued the CGL policy to Rodhe's Market, Inc. Argonaut's failure to do so results in such coverage by operation of law.
 {¶ 27} For the following reasons, we agree with Argonaut's conclusion that its CGL policy is not a motor vehicle liability policy. In reaching this conclusion, we rely upon the Ohio Supreme Court's decision in Selander, supra. We find the Selander decision applicable to the facts of the case sub judice because it specifically addresses how to determine the type of coverage. In Selander, the decedent's spouse sought UM/UIM coverage under a Fivestar General Business Liability Policy issued by Erie to the decedent's business. Id. at 542. Erie refused to pay the claim on the basis that the Fivestar policy did not provide automobile liability coverage or UM/UIM coverage. Id. The trial court and the court of appeals found UM/UIM coverage under the Fivestar policy on the basis that the policy was a motor vehicle liability policy subject to R.C. 3937.18. Id. On appeal to the Ohio Supreme Court, the Court affirmed the decision of the court of appeals finding UM/UIM coverage under the Fivestar policy. Id.
 {¶ 28} In reaching this conclusion, the court held that "the type of policy is determined by the type of coverage provided, not by the label affixed by * * * the insurer." Id. at 546, citing St. Paul Fire Marine Ins. Co. v. Gilmore (1991), 168 Ariz. 159, 165, 812 P.2d 977,983. The Court further concluded that where motor vehicle liability coverage is provided, even in limited form, UM/UIM coverage must be provided. Id. at 544, citing Goettenmoeller v. Meridian Mut. Ins. Co. (June 25, 1996), Franklin App. No. 95APE11-1553 and House v. State Auto. Mut. Ins. Co. (1988), 44 Ohio App.3d 12. Because the policy provided liability coverage, in the limited circumstance for "non-owned" and "hired" vehicles, R.C. 3937.18 applied to the Fivestar policy and Erie was required to offer UM/UIM coverage. Id. at 544-545. Since Erie did not offer UM/UIM coverage, such coverage arose by operation of law. Id. at 546.
 {¶ 29} Most importantly, for purposes of this appeal, the Court declined to apply the H.B. 261 version of R.C. 3937.18 to Erie's Fivestar policy. In footnote one, the Court specifically stated that it would not apply the H.B. 261 version of R.C. 3937.18, to the Fivestar policy, because that version of the statute was not in effect at the time of the Selander's accident. Id. Therefore, we conclude, according to the Supreme Court's decision in Selander, that it is the law in effect, on the date of the accident, that determines what version of R.C. 3937.18
applies for purposes of determining the type of coverage. The accident, in the case sub judice, occurred on June 2, 2000. The S.B. 57 version of R.C. 3937.18 was in effect on this date.[3]
 {¶ 30} In Bowles v. Utica Natl. Ins. Grp., Licking App. No. 02 CA 68, 2003-Ohio-254, we determined the inclusion of liability coverage for "hired" and "non-owned" vehicles did not transform a commercial auto policy into a motor vehicle liability policy of insurance. We made this determination relying upon the H.B. 261 version of R.C. 3937.18. We find this conclusion applicable to the case sub judice even though the S.B. 57 version of R.C. 3937.18 is the applicable statute. The S.B. 57 version of R.C. 3937.18 only varies from the H.B. 261 version of R.C. 3937.18 in that Section (L)(2) further defines when an umbrella policy is an "automobile liability or motor vehicle policy of insurance." We do not find this change effects our determination as to whether the inclusion of coverage for Ahired@ and "non-owned" vehicles transforms the policy into a motor vehicle liability policy of insurance.
 {¶ 31} In reaching this conclusion, we recognize that when determining scope of coverage, as opposed to type of coverage, the Supreme Court does not use the date of accident to determine the applicable version of R.C. 3937.18. Instead, as noted above, the Court, in the Ross decision, indicated that in determining scope of coverage, the law in effect at the time of entering into a contract for automobile liability insurance controls the rights and duties of the contracting parties. Ross at syllabus. We also conclude the Wolfe decision is inapplicable as it clearly only applies to motor vehicle liability policies of insurance.
 {¶ 32} Accordingly, we find the Selander case requires us to apply the law in effect, on the date of the accident, in order to determine the type of coverage. As noted above, the law in effect, on the date of the accident, was the S.B. 57 version of R.C. 3937.18. Section (L) specifically defines what is a motor vehicle liability policy of insurance. This court has previously determined, in the Bowles decision, that the inclusion of "hired" and "non-owned" provisions in a policy of insurance does not transform the policy into a motor vehicle liability policy under the H.B. 261 version of 3937.18. The S.B. 57 version of R.C. 3937.18 is almost identical to the H.B. 261 version of this same statute. Thus, Argonaut's CGL policy is not a motor vehicle liability policy and it was therefore, not required to offer UM/UIM coverage to Rodhe's Market, Inc. when it issued the policy.
 {¶ 33} Argonaut's First Assignment of Error is sustained.
 II {¶ 34} Argonaut maintains, in its Second Assignment of Error, that its umbrella policy does not provide coverage pursuant to R.C.3937.18(L)(2). We agree.
 {¶ 35} The S.B. 57 version of R.C. 3937.18(L)(2) provides that an umbrella policy is a motor vehicle liability policy of insurance only when it is Awritten as excess over one or more policies described in division (L)(1) of this section. We determined in Argonaut's First Assignment of Error that the CGL policy is not a motor vehicle liability policy as defined in R.C. 3937.18(L)(1). Because the umbrella policy under consideration is not excess over a policy described in R.C.3937.18(L)(1), it also is not a motor vehicle liability policy, and Argonaut was not required to offer UM/UIM coverage under said policy.
 {¶ 36} Argonaut's Second Assignment of Error is sustained.
 {¶ 37} We will not address Argonaut's Third, Fourth or Fifth Assignments of Error as we find them moot based upon our disposition of its First and Second Assignments of Error.
 {¶ 38} For the foregoing reasons, the judgment of the Court of Common Pleas, Holmes County, Ohio, is hereby reversed.
[1] (1999), 85 Ohio St.3d 660, 1999-Ohio-292.
[2] The Burkhart case addressed both "valet parking" and "mobile equipment" provisions. The Cox case only addressed the "valet parking" provision.
[3] S.B. 57 became effective on November 2, 1999.
By: Wise, J., Farmer, P. J., and Boggins, J., concur.
Topic: Whether "non-owned" and "hired" provisions make CGL policy a motor vehicle policy post H.B. 261.