874 P.2d 968

ESTATE OF Jennifer A. BALL, By and Through its personal representative, Elmer SAYRE, Plaintiff–Appellant, Cross Appellee,

v.

AMERICAN MOTORISTS INSURANCE COMPANY, a Texas corporation; Kemper National P & C Companies dba American Motorist Insurance Company (AMICO), a foreign corporation, Defendants–Appellees, Cross Appellants.

No. 1 CA–CV 91–0364.

Court of Appeals of Arizona, Division 1, Department B.

Nov. 26, 1993.

Review Granted on issue 1 and Denied on other issues June 1, 1994.

Law Offices of Glynn W. Gilcrease, Jr. by Glynn W. Gilcrease, Jr., Tempe, for plaintiff-appellant cross appellee.

Jennings, Strouss & Salmon by John A. Micheaels, and James M. Ackerman, Phoenix, for defendants-appellees cross appellants.

## OPINION

NOYES, Judge.

The question is whether a named insured can waive an insurer's violation of Ariz.Rev. Stat.Ann. (A.R.S.) section 20–259.01(C) (Supp.1992), the statute requiring insurers to give named insureds a written offer of underinsured motorist (UIM) coverage. We hold that a named insured can make such a waiver by stipulating that it knew its rights regarding UIM coverage and that it had rejected UIM coverage before it was offered. Accordingly, we affirm the trial court grant of summary judgment to the Defendant insurers.

### I.

The named insured is Fleming Company (Fleming), a national food services corporation that purchases fleet insurance for about three thousand vehicles located in states throughout the country. Fleming employed a "risk manager" to coordinate and oversee its insurance coverage. The risk manager obtained Fleming's insurance coverage through an insurance broker. The risk manager told the broker what specific coverage Fleming wanted, and the broker solicited bids from insurers for that specific coverage.

In 1984, Fleming accepted a bid for automobile insurance from American Motorists Insurance Company, an affiliate of Kemper National P & C Companies, doing business as American Motorist Insurance Company (Defendants). Each year thereafter, from 1985 through 1988, Fleming specified the coverage it wanted, and Defendants successfully retained Fleming's automobile insurance business.

At all times pertinent to this case, Fleming specified to Defendants that it wanted three million dollars in liability coverage and that it wanted only "statutory" uninsured motorist (UM) and UIM coverage. Both Fleming and Defendants understand that "statutory" UM and UIM coverage is the minimum coverage, if any, required by law. Different states have different requirements regarding UIM coverage. Arizona requires that UIM coverage be offered but does not require that it be purchased. *See* A.R.S. § 20–259.01(C).

Both Fleming and Defendants agree that, from the inception, each knew that Fleming was not interested in optional UIM coverage; it would purchase only such UIM coverage as was required by law. Fleming complied with Arizona law, but Defendants did not. Defendants failed to present Fleming with a written offer of Arizona UIM coverage as required by A.R.S. section 20–259.01(C).

Jennifer Ball (Ball) was an employee of Fleming and, as such, was covered by the Fleming policy while driving a Fleming vehicle. On July 15, 1988, Ball was killed in Arizona while driving a vehicle provided to her by Fleming. Elmer Sayre (Plaintiff) is Ball's father and the personal representative of her estate. Plaintiff collected policy limits from both the other driver's liability insurer and from Ball's personal UIM insurer, but these insurance proceeds did not fully satisfy Plaintiff's damages. Plaintiff made demand on Defendants for UIM payment under the Fleming policy. Defendants denied coverage on grounds that the Fleming policy did not include Arizona UIM coverage.

Plaintiff filed suit against Defendants, claiming that Defendants' failure to make a written offer of UIM coverage to Fleming meant there was three million dollars of UIM coverage in the Fleming policy. Plaintiff and Defendants each filed motions for summary judgment. Fleming is not a party to the lawsuit. Fleming supported Defendants' argument that Fleming had waived the written offer requirement. The trial court granted summary judgment to Defendants and awarded attorneys' fees. The trial court thereafter struck the award of attorneys' fees. Plaintiff appealed, and Defendants cross-appealed on the attorneys' fees issue. Defendants later abandoned the cross-appeal. We have jurisdiction pursuant to A.R.S. section 12–2101(B) (Supp.1992).

### II.

### A.

The applicable statute provides in part as follows:

C. *Every insurer* writing automobile liability or motor vehicle liability policies, as

provided in subsection A of this section *shall also make available to the named insured thereunder and shall by written notice offer the insured* and at the request of the insured shall include within the policy *underinsurance motorist coverage* which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.

A.R.S. § 20–259.01(C) (Supp.1992) (emphasis added).

█ If the insurer fails to offer UIM coverage to the named insured, UIM coverage in the amount of the liability limits is included in the policy by operation of law. *See St. Paul Fire and Marine Ins. Co. v. Gilmore,* 168 Ariz. 159, 167, 812 P.2d 977, 985 (1991); *Insurance Co. of North America v. Superior Ct.,* 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990). What distinguishes this case from the cited cases, however, is that the named insured in this case has stipulated that it waived the "written offer" requirement, whereas the named insureds in the cited cases did not.

There is no dispute in this case between the insurer and the named insured—together they avowed to the trial court that Fleming knew its options regarding Arizona UIM coverage and that a written offer by Defendants would have been a meaningless act because Fleming had rejected in advance all optional UIM coverage. Plaintiff cannot and does not complain about Fleming's rejection of Arizona UIM coverage; Plaintiff complains only about Defendants' failure to make a written offer of UIM coverage to Fleming.

█ There are no Arizona cases directly addressing the waiver issue, but four cases from other jurisdictions have done so: *Hellerstedt v. Old Republic Ins. Co.,* 429 N.W.2d 677, 679 (Minn.App.1988); *Boldt v. State Farm Mut. Auto. Ins. Co.,* 345 N.W.2d 771, 773 (Minn.1984); *Del Prado v. Liberty Mut. Ins. Co.,* 400 So.2d 115, 116 (Fla.App.1981); *Abbott v. California State Auto. Ass'n.,* 68 Cal.App.3d 763, 137 Cal.Rptr. 580, 585 (1977). Each of these cases holds that a named insured can waive the protection of the statutory "written notice" requirement. In view of the stipulation by Fleming in this case that it had waived the "written offer" require-

ment, we agree with the conclusion stated in *Del Prado:*

> [I]f there is a statutory or other administratively imposed obligation to secure a written rejection, certainly the named insured can waive this requirement which was designed for its protection. Statutory rights can be waived....
>
> ... In the instant case, there is no question that the named insured made an informed rejection of uninsured motorist coverage.

*Del Prado,* 400 So.2d at 116–17.

If there was a dispute between Defendants and Fleming as to the waiver, we agree that the protection of A.R.S. section 20–259.01(C) would apply and that the Fleming policy would contain policy-limits UIM coverage by operation of law. An insurer should always comply with the Arizona "written offer" statute; it is at the mercy of the named insured when it does not. An Arizona automobile insurance policy contains liability-limits UIM coverage by operation of law unless the insurer can prove its compliance with the "written offer" statute or unless the named insured stipulates, after the claim is made, that it had waived the "written offer" requirement. In this case, the named insured has so stipulated; this post-claim stipulation of waiver is all that excuses the insurer's violation of the "written offer" statute.

The public policy behind A.R.S. section 20–259.01(C) is to guarantee that the named insured has knowledge and opportunity to purchase UIM coverage. *See Ormsbee v. Allstate Ins. Co.,* 148 Ariz.Adv.Rep. 7, 8 (Sept. 23, 1993). The question then becomes whether that public policy is so rigid as to preclude the named insured from stipulating that it waived the "written offer" protection of Arizona law. Although it would be contrary to public policy to allow insurers to try to prove waiver over objection of the named insured, we see no reason to preclude the named insured from stipulating to a waiver of the "written offer" requirement. When that stipulation is made, as it has been in this case, we find no legal reason to rewrite this lawful contract with which all contracting parties are satisfied.

## III.

The other two issues raised by Plaintiff would not warrant a trial. Plaintiff claims that the documents reflect the existence of UIM coverage. This claim is based on an admitted typographical error in a memorandum prepared by a claims representative after expiration of the policy. Such evidence does not raise a genuine issue of material fact about the existence of UIM coverage where, as here, the contracting parties agree that there is no UIM coverage.

Plaintiff also claims that Ball had a reasonable expectation of UIM coverage pursuant to *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 682 P.2d 388 (1984). This claim could be viable against Fleming if there were evidence or reasonable inference that Fleming somehow misled Ball regarding the existence of UIM coverage, but we have been shown no such evidence or inference; and, in any event, Fleming is not a party to this lawsuit. Although there is evidence that Ball reduced her own UIM coverage from $300,000 to $100,000 when she received the Fleming vehicle, and this fact is troubling because it leads one to speculate about why she did that, we have been shown no evidence that would support a verdict shifting responsibility to Fleming or the insurer regarding Ball's decision to reduce her personal UIM coverage. The only evidence in the record about Ball's reduction of personal UIM coverage is that no one knows why she made that decision. Standing alone, which it does, the unfortunate circumstance of Ball's reduction of personal UIM coverage is no legal reason to rewrite the contract between Fleming and Defendants, nor does it present a triable issue for the jury.

The *Darner* principles apply to certain disputes between contracting parties about the provisions of their contract. In this case, there is no dispute between the contracting parties about the provisions of their contract; they both agree that their contract does not include Arizona UIM coverage.

## IV.

Defendants request an award of attorneys' fees on appeal pursuant to A.R.S. section 12–341.01(A) (1992). In recognition of the fact that the cause of this litigation was Defendants' failure to comply with an Arizona statute, we decline to award attorneys' fees to Defendants.

The summary judgment in favor of Defendants is affirmed.

VOSS, J., concurs.

GRANT, Presiding Judge, dissenting.

I respectfully dissent.

As part of her employment benefits Ball was provided with an insured company car in January, 1988. Following receipt of the benefit of the company car with insurance, Ball reduced the uninsured motorist ("UM") and underinsured motorist ("UIM") coverage limits on her own automobile from $300,000 to $100,000.

On July 15, 1988 Ball was killed by a negligent drunk driver. On behalf of Ball's three surviving minor children and parents, Sayre collected all that was available from the other driver's insurer and also collected $100,000 from the decedent's UIM coverage.

Demand was then made on defendant for payment under its underinsured provisions. Defendant denied coverage, claiming that the endorsement issued for Arizona did not contain UIM coverage. This suit was commenced to enforce coverage. Both parties filed motions for summary judgment. Defendant attached affidavits from its agents and broker stating that Fleming only wanted mandatory minimum coverage in the various states. The price quotation that defendant gave Fleming, in a bid to replace previous coverage from Travelers Indemnity Corporation, did not contain any specific language excluding UIM coverage in Arizona. The price quotation sheet listed UM/UIM coverage. The language in the endorsement indicates that the policy *includes* UIM coverage. Under the Schedule of Coverage and Covered Autos, the section indicating UIM coverage includes in parentheses the language "When Not Included in Uninsured Motorist Coverage." In Kemper's Class Report—Automobile, the defendant indicated that UIM

coverage existed, but in the trial court pleadings, defendant claimed that this was a "typo". Defendant admits that UIM coverage was not offered to Fleming in writing or rejected by Fleming in writing in Arizona or in Oklahoma, where the policy originated.

Fleming's practice for many years had been to insure its owned and leased fleet of vehicles with substantial liability coverage, but with only the minimum UM and UIM coverage (if any) required by statute in the various states where the vehicles are principally garaged. Fleming's insurance is a "brokered" account. This means that Fleming specifically instructs an insurance broker as to the types of coverage it wants and does not want, so that insurance companies can formulate bids or proposals on precisely the desired coverage. Fleming's Risk Manager was aware that UIM coverage was not required by law in Arizona, but that Arizona UIM coverage could be purchased up to liability policy limits. No evidence was presented that Ball ever saw the defendant's policy, ever read the policy, or ever spoke to anyone at Kemper regarding its terms. The evidence is undisputed, however, that she reduced her own UM/UIM coverage upon receiving the insured vehicle from her employer.

Arizona law requires that insurers offer in writing to purchasers an opportunity to buy UIM coverage. A.R.S. section 20–259.01(C) and (E) provides in relevant part:

C. Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to the named insured thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy underinsurance motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy. The selection of limits or rejection of coverage on a form approved by the director, by a named insured or applicant shall be valid for all insureds under the policy. The offer need not be made in the event of the reinstatement of a lapsed policy or the transfer,

substitution, modification or renewal of an existing policy. At the request of the insured the insured may purchase and the insurer shall then include within the policy underinsured motorist coverage which extends to and covers all persons insured under the policy in any amount authorized by the insured up to the liability limits for bodily injury or death contained within the policy....
E. "Underinsurance motorist coverage" includes coverage for a person if the sum of the limits of liability under all bodily injury or death liability bonds and liability insurance policies applicable at the time of the accident is less than the total damages for bodily injury or death resulting from the accident. To the extent that the total damages exceed the total applicable liability limits, the underinsurance motorist coverage provided in subsection C of this section is applicable to the difference.

A written notice is mandatory. The offer must be in definite and specific terms so as to make effective the insured's clear acceptance of the additional coverage or knowledgeable rejection thereof. UIM coverage is included by operation of law if the insurer fails to effectively offer such coverage in writing to the purchaser. *St. Paul Fire & Marine Ins. Co. v. Gilmore*, 168 Ariz. 159, 167, 812 P.2d 977, 985 (1991); *Insurance Co. of North America v. Superior Ct.*, 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990). Since the defendant admits that Kemper did not offer Fleming the UIM coverage in Arizona, plaintiff argues that the effect of the non-offer is that the insured is entitled to coverage to the extent of the liability coverage which in this case is $3,000,000.

Defendant does not dispute the law on this issue but instead argues that Fleming waived the statutory protection of a written offer of UIM coverage by specifically directing Kemper not to include non-required UIM in its proposal. Defendant argues that as a result, Kemper's proposal did not include UIM coverage in states such as Arizona where that coverage is not required by law. Defendant claims the trial court was correct when it held that Fleming is not entitled to UIM coverage which it did not intend, did not pay

for, and which it expressly waived in soliciting Kemper's proposal.

Defendant states that the public policy behind A.R.S. section 20–259.01(C) is to give the insured the option of purchasing UIM coverage up to policy limits if such coverage is desired. *Spain v. Valley Forge Ins. Co.,* 152 Ariz. 189, 192, 731 P.2d 84, 87 (1987). Thus the defendant and the majority take the position that there is an exception to the mandatory written offer rule of the statute which is that a sophisticated corporation, well aware of the nature and availability of UIM coverage, may waive the protection of the mandatory offer by specifically directing the insurance company not to include UIM coverage in its proposal. In such a situation, they urge, there is no failure to make a required offer because the offer was knowingly waived by the insured before it could be made.

As plaintiff points out, in Arizona the law is very clear that a written UIM offer is mandatory and the effect of noncompliance is coverage in the amount of the liability policy limits. *Ormsbee v. Allstate Ins. Co.,* 176 Ariz. 109, 859 P.2d 732 (1993); *St. Paul Fire & Marine Ins. Co.,* 168 Ariz. at 167, 812 P.2d at 985. The majority, stating that there are no Arizona cases directly addressing the waiver issue, relies on cases from other states which hold that a named insured can waive the protection of the statutory "written notice" requirement. This ignores the clear import of the recent Arizona supreme court opinion in *Ormsbee v. Allstate Ins. Co.*

The majority states that: "If there was a dispute between Defendants and Fleming, we agree that the protection of A.R.S. section 20–259.01(C) would apply and that the Fleming policy would contain policy-limits UIM coverage by operation of law." *Ante* p. 6. The record clearly shows that Fleming insures over three thousand vehicles per year. That insurance is such a substantial portion of Fleming's cost of doing business that Fleming has its own "risk manager" to coordinate and oversee its insurance coverage. Certainly a company with whom Fleming placed its account such as the defendant, would be eager to please the customer and maintain such a large account. Similarly,

Fleming would clearly want to get the lowest possible price for its fleet insurance coverage. There is therefore a commonality of interests between the defendant and Fleming and their post-claim agreement on coverage is not surprising.

Even accepting the majority's and the defendant's theory of advance oral waiver of coverage, the issue should still be one of fact for the jury as there are disputed issues of material fact as to whether such a waiver did actually occur. It is precisely because the legislature did not want evidentiary wars on this issue that our statute, A.R.S. section 20–259.01(C), contains mandatory language. Our supreme court in *Ormsbee* stated, "the statute is absolute and on its face covers all automobile liability policies." 148 Ariz.Adv. Rep. at 7. This court cannot and should not contradict the wisdom of the legislature in this regard. Therefore I would hold that the trial court erred in finding a valid oral waiver of UIM coverage and in granting summary judgment for the defendant. I would reverse and remand with directions to grant summary judgment for the plaintiff. Even under the majority's theory of this case, the judgment should be reversed and the case remanded for trial due to the admitted discrepancies in the evidence.