888 P.2d 1311

ESTATE OF Jennifer A. BALL, By and Through its personal representative, Elmer SAYRE, Plaintiff–Appellant, Cross–Appellee,

v.

AMERICAN MOTORISTS INSURANCE COMPANY, a Texas corporation; Kemper National P & C Companies, dba American Motorist Insurance Company (AMICO), a foreign corporation, Defendants–Appellees, Cross–Appellants.

No. CV–94–0005–PR.

Supreme Court of Arizona,
En Banc.

Feb. 7, 1995.

Law Offices of Glynn W. Gilcrease, Jr. by Glynn W. Gilcrease, Jr., Tempe, for plaintiff-appellant.

Jennings, Strouss & Salmon by John A. Micheaels and James A. Ackerman, Phoenix, for defendants-appellees.

OPINION

MARTONE, Justice.

We are asked to decide whether the named insured in an automobile insurance policy can waive the requirement that the insurer extend a written offer of underinsured motorist coverage as required by the Uninsured Motorist Act, A.R.S. § 20–259.01.

I. BACKGROUND

Jennifer Ball was employed by Fleming Company (Fleming), a national food services corporation. While driving a company car, she was struck and killed by a drunk driver. Three minor children survived her. Elmer Sayre, Ball's father and personal representative (the Estate), recovered the policy limits from the drunk driver's insurer and Ball's personal underinsured motorist (UIM) insurer. Because the proceeds did not fully cover her damages, the Estate demanded payment from Fleming's insurer, American Motorists Insurance Company, an affiliate of Kemper National P & C Companies, doing business as American Motorist Insurance Company (Kemper). That demand was rejected.

Fleming operates more than 3,000 vehicles in at least 20 states. It employs a profes-

sional risk manager to coordinate its insurance coverage. Roy Vickery, the risk manager in 1984, solicited bids from insurers through an insurance broker. The insurers were given Fleming's old policy to show the coverage desired. Fleming asked for only "statutory" uninsured motorist (UM) and UIM coverage. Fleming did not want this coverage unless required in a specific state. Arizona does not require that insureds buy UIM coverage, but does require that insurers make it available in amounts not less than the policy's liability limits. A.R.S. § 20–259.01(B).

Fleming accepted Kemper's bid and Kemper provided insurance coverage for Fleming from 1984 through 1988. The policy provided three million dollars in liability coverage and the requested "statutory" UM and UIM coverage. Both Fleming and Kemper understand "statutory" to mean the minimum coverage required by law, which, for UIM, was zero in Arizona. Under their position, the policy contains no UIM coverage. It is for this reason that Kemper rejected the Estate's claim.

The Estate brought an action against Kemper, claiming that Kemper failed to make a written offer of UIM coverage to Fleming. The Estate sought imputation to the policy of UIM coverage equal to the policy's liability limit—three million dollars. Kemper claims that the requirement was waived. Fleming supports this claim, though it is not a party to this action.

The trial court granted Kemper's motion for summary judgment, and denied the Estate's cross-motion for summary judgment. A divided court of appeals affirmed. *Estate of Ball v. American Motorists Ins. Co.*, 178 Ariz. 411, 874 P.2d 968 (App.1993). We granted the Estate's petition for review because this is an issue of first impression. We now reverse.

## II.  ANALYSIS

A.R.S. § 20–259.01(C), as written at the time in question, was substantially similar to the current A.R.S. § 20–259.01(B), which provides:

> B. *Every insurer* writing automobile liability or motor vehicle liability policies shall also make available to the named insured thereunder and *shall by written notice offer the insured* and at the request of the insured shall include within the policy *underinsurance motorist coverage* which extends to and *covers all persons insured under the policy,* in limits not less than the liability limits for bodily injury or death contained within the policy....

(Emphasis added).

Kemper admits that it failed to comply with the written offer requirement. It instead claims that the requirement was waived, both in writing, through the old Travelers policy and the request for statutory UIM coverage, and orally. Fleming supports this claim. In his affidavits on the cross-motions for summary judgment, Vickery said that Fleming did not want and would have rejected any offer of UIM coverage. Kemper argues that when the insurer and named insured agree that the named insured did not want UIM, and the named insured so informed the insurer, the written offer requirement is waived. Kemper contends that Fleming was a sophisticated business with a professional risk manager, knew what it wanted, and made a knowing waiver. If there were some dispute about what was intended or whether there was waiver, Kemper concedes the Estate would prevail. But, it argues, there is no dispute here.

The Estate claims that the mandatory language of the statute could not be clearer. It requires a written offer. There was none. The named insured should not be able to waive this mandatory requirement. The purpose of the written offer is to avoid post-claim disputes about coverage, especially where, as here, the rights of another insured are affected. Compliance is easy and should be required.

Kemper's argument has surface appeal. Fleming and Kemper agree, post-claim, that

coverage was not desired and rights were waived through two pre-claim documents. Why should the parties not be allowed to so agree? The answer is that there is another party involved who is specifically protected by the statute. UIM coverage "extends to and covers all persons insured under the policy." A.R.S. § 20–259.01(B). Ball was a person insured under the policy. Allowing the insurer and named insured to agree to facts and the legal significance of documents after the claim arises defeats the protective purpose of the statute. It lets the insurer and named insured bind a "person insured under the policy" to their post-claim statement of facts. But it is this person, the driver, that the statute was designed to protect. *See Spain v. Valley Forge Ins. Co.*, 152 Ariz. 189, 192–93, 731 P.2d 84, 87–88 (1986). When the driver dies, he or she will not be able to dispute the statement of facts. Yet Kemper's theory requires some dispute to overcome a purported waiver. Had Ball lived, she might have been able to provide such a dispute. She reduced her personal UIM coverage when she began using Fleming's company car. Her reasons for doing so are not clear. She may have done so in reliance on some representation made by Fleming or Kemper. That she died and cannot tell us should not result in a windfall to Kemper. The statute was .designed to prevent controversies like this. An insurance provider protects itself by complying with the statute.

An analogy to the law of third party beneficiaries in contracts may be useful. It is generally accepted that the promisor and promisee cannot modify a contract once the third party beneficiary materially changes his position in reliance on it or sues on it. *Restatement (Second) of Contracts* § 311 (1979). Two of the parties cannot modify the agreement at the expense of a third. But that is what Kemper and Fleming seek to do here. Their post-claim statement of facts is meant to be binding upon the Estate. Ball is a beneficiary ("a person insured under the

policy"). While it is unclear why she reduced her UIM coverage, her estate certainly sued to enforce the insurance contract. Kemper and Fleming should not be able to enter into a post-claim agreement that affects the Estate's rights.

Kemper also argues that a waiver was made before the claim arose and, therefore, we need not rely on post-claim statements of intent. According to Kemper, its written proposal including only "statutory" UM and UIM coverage, together with Fleming's previous policy, show waiver. But this does not avoid the problem that two parties cannot be allowed to waive the protection a statute affords to third parties. The insurer and named insured can decide that UIM coverage will not be included in the policy. But to do this, they must comply with the law requiring a written offer.

A regime that allowed for *ad hoc* waivers of written offers would create havoc. An insurer could argue that a person who wrote a letter requesting specific coverage, but not UIM, made a knowing waiver of an offer of UIM. Or insurers and named insureds might have an incentive to "agree" to the underlying facts surrounding the issuance of an insurance policy when it suited them, to the detriment of others insured under the policy. To be sure, there is no suggestion that Kemper and Fleming have acted fraudulently here. But the idea that fewer than all of the persons protected by the statute may bind those who do not so stipulate is problematic.

While we have not squarely decided the precise question presented here, we have discussed the consequences of the failure to make a written offer of UM.[1] In *Insurance Co. of N. Am. v. Santa Cruz*, 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990), we said:

> A.R.S. § 20–259.01(B) states that an insurer shall offer the insured an amount of uninsured coverage equal to the liability limits for bodily injury. *The use of the word "shall" indicates a mandatory intent*

---

1. The Uninsured Motorist Act contains separate but identical requirements to offer both UM and UIM coverage in writing. A.R.S. § 20–259.01(A), (B).

*by the legislature....* When an insurer's statutory obligation to provide or offer certain coverage is mandatory, the proper remedy is to include the coverage in the policy by operation of law.... The insured is entitled to the additional coverage, usually in an amount equal to the bodily injury liability limits of the policy, ... whether or not the insurer assesses an additional premium for the uninsured motorist coverage.

(Emphasis added).

In *Ormsbee v. Allstate Ins. Co.,* 176 Ariz. 109, 859 P.2d 732 (1993), we stated that the purpose of the Uninsured Motorist Act is "to guarantee that responsible drivers will have an opportunity to protect themselves and their loved ones as they would others. 'The offer of UIM coverage *mandated* by A.R.S. § 20–259.01(C) was intended to implement this protection.'" *Id.* at 112, 859 P.2d at 735 (emphasis added), (quoting *St. Paul Fire & Marine Ins. v. Gilmore,* 168 Ariz. 159, 165–66, 812 P.2d 977, 983–84 (1991)). Without the offer, the statute's protection is diluted. Because the insurer did not offer UIM coverage, it was imputed to the policy "as a matter of law." *Gilmore,* 168 Ariz. at 167, 812 P.2d at 985.

Although these cases do not deal directly with the issue presented here, they do share an adherence to the plain language of the statute. In *Ormsbee,* the insurer argued that the statute applied only to primary policies and not to umbrella liability policies. The statute did not support that argument.[2] We said "the statute is absolute and on its face covers all automobile liability policies." *Ormsbee,* 176 Ariz. at 111, 859 P.2d at 734.

We find no support for Kemper's claim that the written offer requirement can be waived. The statutory requirement of a written offer is absolute on its face. Our cases have repeatedly emphasized its manda-

tory language, using words like "shall," *Santa Cruz,* 166 Ariz. at 85, 800 P.2d at 588, "mandated," *Gilmore,* 168 Ariz. at 166, 812 P.2d at 984, and "requires," *Ormsbee,* 176 Ariz. at 112, 859 P.2d at 735. The statute expressly provides that the "offer need not be made in the event of the reinstatement of a lapsed policy or the transfer, substitution, modification or renewal of an existing policy." A.R.S. § 20–259.01(A), (B).[3] Because we cannot add an exception to the statute, we hold that the written offer requirement cannot be waived, either in writing or orally.

Our position is supported by a recent opinion of the Supreme Court of Washington, *Clements v. Travelers Indem. Co.,* 121 Wash.2d 243, 850 P.2d 1298 (Wash.1993). Washington, like Arizona, does not require UIM coverage. It does, however, require that coverage be rejected in writing. Clements was injured while driving a company car. He attempted to recover UIM benefits from Travelers, the employer's insurer. There was no express UIM coverage under the policy, but Clements claimed that the failure to reject UIM in writing meant coverage existed as a matter of law. The employer's corporate risk manager stated that the employer did not want UIM coverage. The policy provided that coverage would be included only where required by law. Travelers argued that the risk manager's testimony, together with the language of the policy, acted as the functional equivalent of a written waiver. It was undisputed that the employer never provided the writing required by law.

The Washington Supreme Court read the Washington statute strictly and held that a specific written rejection was required. The burden was upon the insurer to obtain the rejection. A post-claim agreement that no coverage was desired and language in the policy requesting only minimal UIM coverage were not enough. Only strict adherence

---

**2.** It does now. A.R.S. § 20–259.01(I) (Supp. 1994) (inserted 1993).

**3.** This is a renewal of an existing policy. But Kemper concedes that for a renewal to excuse

the written offer, the policy must have been properly issued in the first instance. *Response to Petition for Review* at 7, n. 2. No written offer was ever made here.

to the legislature's "bright line" would satisfy the court. *Clements*, 850 P.2d at 1305.

Our statute also provides an easy to follow, bright-line rule. When the statute is followed, there is no need for post-claim agreements on whether the named insured really wanted UIM coverage. Claims of collusion between the insurer and named insured will likely fail. Had Kemper followed the statute, it would have been entitled to summary judgment. Having failed to do so, it was not. Requiring strict compliance with the statute is not form over substance. It is the only sure and uniform way to avoid credibility contests over whether such an offer was actually made.

The opinion of the court of appeals is vacated, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and ZLAKET, JJ., concur.