907 P.2d 531

**Allen R. LAWRENCE and Marianna Lawrence, husband and wife, Plaintiffs–Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee.**

No. 1 CA–CV 93–0031.

Court of Appeals of Arizona, Division 1, Department C.

March 23, 1995.

Review Granted Dec. 19, 1995.

Kenneth L. Tucker & Associates by Kenneth L. Tucker, Donna J. Platt, Phoenix, for plaintiffs-appellants.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Steven D. Smith, Christopher Robbins, Phoenix, for defendant-appellee.

## OPINION

WEISBERG, Judge.

Marianna and Allen Lawrence ("the Lawrences") appeal the trial court's grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm") determining that the underinsured motorist ("UIM") coverage limits under their automobile policy were $15,000/$30,000.

We address the following issue in this appeal: Whether the addition of a named insured to a policy is a "modification" within the meaning of Ariz.Rev.Stat.Ann. ("A.R.S.") section 20–259.01(C), thereby freeing State Farm from the requirement of providing notice of UIM coverage options to that new named insured. Because the addition of a named insured is not a mere modification, we hold that State Farm did not give proper notice. Accordingly, we reverse and remand to the trial court for entry of judgment in favor of the Lawrences.

## FACTS AND PROCEDURAL HISTORY

In 1981, our legislature amended A.R.S. section 20–259.01(C) to require that insurance companies provide written notice to named insureds of their right to purchase UIM coverage in amounts up to the limits of

their bodily injury coverage. In 1982, the statute was further amended to provide that the offer need not be made in the event of the "reinstatement of a lapsed policy or the transfer, substitution, modification or renewal of an existing policy."

In November 1981, Virginia Lawrence and Allen Lawrence entered into an agreement with State Farm for coverage on their 1980 Chevrolet Malibu. Their policy had limits of $50,000/$100,000 for bodily injury liability. Virginia signed the application agreement and selected UIM coverage in the amounts of $15,000/$30,000. Although a named insured, Allen was not notified by State Farm of the option of purchasing UIM coverage up to the limits of the bodily injury liability coverage.

On May 12, 1983, after Virginia's death, the policy was modified to delete her as a named insured. In June 1985, Allen married Marianna. In July 1986, they traded in their respective vehicles and purchased a new vehicle. The Lawrences went to their State Farm agent seeking coverage for the new vehicle and the addition of Marianna to the policy. State Farm added Mariana as a covered household member under the policy; however, she objected to not being a named insured. State Farm therefore issued a subsequent policy with both Marianna and Allen as the named insureds. When issuing the policy to Marianna and Allen, State Farm retained the policy number from the first policy issued to Virginia and Allen, and did not notify either Marianna or Allen of their right to purchase additional UIM coverage.

On September 27, 1989, Marianna was in a car accident and suffered serious injuries. She collected the adverse driver's $15,000 policy limits and another $15,000 from State Farm under her UIM coverage, but the Lawrences demanded that they receive a UIM coverage payment in the same amount ($50,000) as their liability limits.

In August 1991, the Lawrences filed a complaint against State Farm alleging that it had failed to give them written notice that they could purchase UIM coverage up to the policy limits for the bodily injury liability coverage in their policy and that, therefore, the UIM limits of $50,000/$100,000 should be imputed to their policy.

State Farm admitted that no written notice had been given directly to Marianna or Allen, but maintained that it had fully complied with A.R.S. section 20–259.01(C) because notice had been given to Virginia at the inception of the policy in 1981, and that no further notice was required.

In August 1992, the trial court granted summary judgment in favor of State Farm and denied the Lawrences' cross-motion for summary judgment. The Lawrences timely appeal. We have jurisdiction pursuant to A.R.S. section 12–2101(B).

## DISCUSSION

### A. *Standard of Review*

We review the grant of summary judgment applying the same standard as the trial court. *United Bank of Ariz. v. Allyn,* 167 Ariz. 191, 195, 805 P.2d 1012, 1016 (App. 1990). A motion for summary judgment should be granted when there are no genuine issues of fact and the movant is entitled to judgment as a matter of law. *Orme Sch. v. Reeves,* 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).

### B. *Analysis*

A.R.S. section 20–259.01 was amended in 1981 to provide that:

Every insurer writing automobile liability or motor vehicle liability policies, as provided in subsection A of this section shall also make available to *the named insured* thereunder and shall by written notice offer the insured and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy.

1981 Ariz.Sess.Laws Ch. 224, § 1 (emphasis added).

The Lawrences argue that, pursuant to A.R.S. section 20–259.01(C), State Farm was required to give Marianna, as a named insured, written notice of her right to increase their UIM coverage. They conclude that, since Marianna did not receive written no-

tice, the $50,000 in coverage should be imputed to the policy as a matter of law. *See Ball v. American Motorists Ins. Co.*, 888 P.2d 1311 (S.Ct., 1995); *Insurance Co. of N. Amer. v. Santa Cruz*, 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990).

State Farm responds that it complied with A.R.S. section 20–259.01(C) when it gave written notice of the UIM coverage options to Allen's deceased wife, Virginia, in 1981. They also rely upon the 1982 amendment which provided that "[t]he offer [of additional UIM coverage] need not be made in the event of a reinstatement of a lapsed policy or the transfer, substitution, modification or renewal of an existing policy." 1982 Ariz.Sess. Laws Ch. 298, § 1. State Farm contends that the changes in the policy, including the addition of Marianna as a new named insured, were "modifications of an existing policy" and, therefore, no further offer was necessary.

### 1. *Notice to Named Insureds*

When interpreting a statute, we must read the statute to give it a fair and sensible meaning. *See, e.g., Janson v. Christensen*, 167 Ariz. 470, 472, 808 P.2d 1222, 1224 (1991). When the language of a statute is plain and unambiguous and conveys a clear and definite meaning, we must accept that meaning and enforce it. *McPeak v. Industrial Comm'n of Arizona*, 154 Ariz. 232, 234, 741 P.2d 699, 701 (App.1987). A.R.S. section 20–259.01 is remedial and should be liberally construed to carry out the intent of the legislature. *Evenchik v. State Farm Ins. Co.*, 139 Ariz. 453, 458, 679 P.2d 99, 104 (App.1984).

The Arizona Supreme Court has determined that the intent of the legislature in enacting A.R.S. section 20–259.01 was "'to guarantee that responsible drivers will have an opportunity to protect themselves and their loved ones as they would others.'" *Ball*, 888 P.2d at 1313–14 (quoting *Ormsbee v. Allstate Ins. Co.*, 176 Ariz. 109, 859 P.2d 732 (1993). This intent requires "that all persons who purchase automobile liability insurance be offered in writing the option to purchase additional … UIM coverage in limits up to those they choose for their bodily injury liability coverage." *State Farm Mut. Auto. Ins. Co. v. Ash*, 888 P.2d 1354, 1359 (App.1994).

In this case, the policy contained two named insureds: Marianna and Allen. Assuming *arguendo* that notice to Allen was properly given, the question we must decide is whether, as a subsequent named insured, Marianna was entitled to additional notice. The statute directs that the written notice be tendered to "the named insured." A.R.S. § 20–259.01(C). The statute does not indicate that only one named insured per policy need be given notice.[1] Under the plain meaning of the statute, then, Marianna, as a named insured, was entitled to separate written notice of the UIM coverage options.

Moreover, we observe that there is a difference in the substantive rights granted to a "named insured" as compared to a "covered member" or "insured." Generally, "named insured" refers only to the policyowner(s) and not to additional insureds who are beneficiaries of the insurance policy but who do not have the right to make substantive decisions regarding the contents of the policy, such as to accept or reject underinsured motorist coverage, or to determine policy limits. *See Shaffer v. Southern Union Gas Co.*, 112 Ariz. 145, 146, 539 P.2d 902, 903 (1975) (only named insured must be offered uninsured motorist coverage). Marianna, too, recognized this difference in rights when she insisted that she be made a "named insured" on the policy, rather than a "covered household member."

We therefore conclude that Marianna, as a named insured, was entitled to separate written notice, unless her addition as a named insured was merely a "modification" of the existing policy within the meaning of A.R.S. section 20–259.01(C). We now turn to that question.

### 2. *The Addition of a Named Insured is not a "Modification"*

A.R.S. section 20–259.01(C) was amended in 1982 to provide that "[t]he offer

---

1. In 1992, the statute was again amended to allow one named insured to bind all insureds whenever the form used to select or reject UIM coverage had been first approved by the Director of Insurance. *See* 1992 Ariz.Sess.Laws Ch. 147, § 1.

[of additional UIM coverage] need not be made in the event of a reinstatement of a lapsed policy or the transfer, substitution, modification or renewal of an existing policy." 1982 Ariz.Sess.Laws Ch. 298, § 1. State Farm argues that the subsequent changes in the policy, including the addition of Marianna as a new named insured, were "modifications of an existing policy" and, therefore, no written offer was required under A.R.S. section 20–259.01. We, however, disagree.

The question of what qualifies as a "modification" under A.R.S. section 20–259.01(C) is one of first impression. Given the stated purpose of the statute, though, we do not believe that the legislature viewed the addition of a named insured as a mere "modification" of the policy.

Prior to the 1992 amendment, the statute required that all new and existing named insureds be given notice, at least once, of the option of purchasing increased UIM coverage. *Ash,* 888 P.2d at 1359–60. Labelling the addition of a named insured as a "transfer, substitution, modification or renewal" of an existing policy would eviscerate the statute's primary purpose of providing notice of possible UIM coverage. The instant case illustrates the harm that could otherwise result: neither named insured on the policy received actual notice of the UIM coverage option from their insurance agent, yet both would be bound by an election made by a deceased co-policyowner almost eight years earlier.

A more reasonable explanation of the legislature's objective in enacting the 1982 amendment is that it intended "to relieve insurers of the administrative burden of needlessly sending duplicative notices concerning increased UIM coverage to named insureds to whom notices *had already been sent,*" *id.* (emphasis added), because automobile policies are frequently "transferred" to a newly purchased vehicle or "modified" to include a newly-licensed teenager. But, unlike a change in the automobile covered, or an addition of rental insurance to a policy, the addition of a named insured affects the substantive rights that a person has been granted by the statute. *See, e.g., Shaffer,* 112 Ariz. at 146, 539 P.2d at 903 (only named insured must be offered uninsured motorist coverage). We therefore do not agree that the addition of a named insured can be viewed as a mere "modification."

Moreover, we do not believe that State Farm can change this result by merely retaining the same policy number. Were we to allow the retention of the policy number to be the indicator of whether a "transfer, substitution, modification or renewal" has been effected, we would be allowing the insurance company, rather than the legislature, to determine when notice is required. An insurer could retain the same policy number throughout generations of a family and never give notice to anyone other than the first applicant. This construction would frustrate the purpose of the statute, at least in its pre–1992 form. Accordingly, we hold that, when State Farm issued the policy to Marianna and Allen as named insureds, it was a "new policy," not merely a modification of the policy previously issued to Virginia and Allen.

Since State Farm failed to strictly comply with its statutory obligation, the remedy is to impute the coverage to the policy as a matter of law. *Ball,* 888 P.2d at 1313–14. *Insurance Co. of N. America,* 166 Ariz. at 85, 800 P.2d at 588.

## CONCLUSION

Summary judgment in favor of State Farm is reversed, and the case is remanded to the trial court with instructions that judgment be entered in favor of the Lawrences.

EHRLICH, P.J., and VOSS, J., concur.