231 P.3d 384

**PROGRESSIVE CASUALTY INSUR-ANCE COMPANY, an Ohio corporation, Plaintiff–Appellant,**

**v.**

**ESTATE OF Jose Juan PALOMERA–RUIZ, a single man; Giant Electric Corporation, an Arizona corporation, Defendants–Appellees.**

**No. 1 CA–CV 09–0065.**

Court of Appeals of Arizona, Division 1, Department E.

May 20, 2010.

Kuntz Plitt Hyland Demlong & Kleifield PC By Steven Plitt, Daniel Maldonado, John K. Wittwer, Phoenix, Attorneys for Plaintiff–Appellant.

Kleinman Lesselyong & Novak By Frank E. Lesselyong and Michael Fairbairn Cordova PC, By Michael Fairbairn Cordova, Phoenix, Co–Counsel for Defendant–Appellee Estate of Palomera–Ruiz.

**OPINION**

HALL, Judge.

¶ 1 In this appeal, we apply the Arizona Revised Statutes (A.R.S.) section 20–259.01 (Supp.2009) provision requiring an insurer to extend a written notice offering uninsured motorist coverage to an insured in an amount equal to the insured's liability coverage. The superior court held that a recording of a telephone conversation concerning such coverage failed to satisfy the written notice requirement and granted summary judgment to the insured. We affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 On November 12, 2001, Christopher W. Thompson (Thompson) called Progressive Casualty Insurance Company's (Progressive) 1–800 number to purchase an auto insurance policy for his company, Giant Electric Corporation (Giant). Progressive electronically recorded Thompson's conversation with its agent, Victoria.

¶ 3 Giant had never obtained an insurance quote from Progressive before that date. At the time of Thompson's call, Giant had a $1,000,000 policy with Hartford Insurance Company of the Midwest that included $1,000,000 of uninsured motorist (UM) and underinsured motorist (UIM) coverage. The recorded exchange about the Hartford policy provides in relevant part:

> **Thompson:**—that says uh, uninsured motorist one mil—, per accident one million dollars.
>
> **Victoria:** There you go. There you go. OK.
>
> **Thompson:** Underinsured motorist per accident one million dollars.
>
> **Victoria:** OK. OK. And that should be it, right? There's no other coverages?
>
> **Thompson:** He—
>
> **Victoria:** That's probably it. 'Cuz you're not getting, um, you're not getting full coverage on the vehicle. So there should be no comprehensive or collision.
>
> **Thompson:** No.
>
> **Victoria:** OK.
>
> **Thompson:** No, there's no other, uh—

**Victoria:** Gotcha.

**Thompson:**—no other coverages.

**Victoria:** Gotcha. OK. One year 1,399. What are you, uh, being charged with the Hartford Insurance?

Later, Victoria and Thompson discussed ways to lower the premium:

**Victoria:** Now one thing you may wanna—it's up, this is up to you. The uninsured and the underinsured motorist coverage where you said a million dollars.

**Thompson:** Yeah.

**Victoria:** Technically it's up to you. Those coverages don't have to be at a million.

**Thompson:** Yeah.

. . . .

**Victoria:** I can get your rate down a little bit if you wanna reduce the coverage on the uninsured.

**Thompson:** Well, I think that'd be worth lookin' at. Yeah.

Ultimately, Thompson chose $100,000 of UM/UIM coverage for Giant.

¶ 4 Progressive did not send a separate written notice to the insured offering to sell UM/UIM coverage in an amount equal to the insured's liability coverage.

¶ 5 Progressive issued a commercial auto policy (the Policy) to Giant effective January 5, 2001 to January 1, 2002. The Policy provided $1,000,000 in liability coverage, and UM/UIM limits of $100,000 per claim and $300,000 in the aggregate. Giant renewed the Policy over the succeeding years with the same UM/UIM coverage limits.

¶ 6 On September 12, 2006, Jose Palomera–Ruiz (Palomera–Ruiz) was a passenger in a Giant utility van driven by Manuel Jesus Armenta–Avena (Armenta–Avena) and insured under Giant's Policy. Palomera–Ruiz suffered fatal injuries following an accident caused by Jill Besey, an uninsured motorist.

¶ 7 On July 6, 2007, Progressive filed a complaint against Palomera–Ruiz's estate (the Estate), Giant, and Armenta–Avena seeking a declaratory judgment that the UM/UIM limits are $100,000 per claim and $300,000 in the aggregate. Giant and the Estate answered, and Progressive and the

Estate filed cross-motions for summary judgment on whether Progressive had failed to provide a written offer of UM/UIM coverage and therefore $1,000,000 in UM/UIM coverage existed as a matter of law. Following oral argument, the superior court granted summary judgment in favor of the Estate.

¶ 8 Progressive appealed. Because the initial judgment did not resolve the claims with respect to all parties, this court held that it lacked jurisdiction to consider the appeal. Accordingly, Progressive obtained an amended judgment that included Armenta–Avena and Giant and then filed this appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## DISCUSSION

■ ¶ 9 We review the grant of summary judgment de novo. *Wallace v. Casa Grande Union High Sch. Dist. No. 82*, 184 Ariz. 419, 424, 909 P.2d 486, 491 (App.1995). Summary judgment is warranted when "the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990); Ariz. R. Civ. P. 56(c)(1).

■ ¶ 10 This case requires us to construe A.R.S. § 20–259.01, Arizona's Uninsured Motorist Act (UMA). In 2001, A.R.S. § 20–259.01(A) provided in relevant part regarding UM coverage:

Every insurer writing automobile liability or motor vehicle liability policies shall make available to the named insured thereunder and *by written notice offer the insured* and at the request of the insured shall include within the policy uninsured motorist coverage which extends to and covers all persons insured under the policy, in limits not less than the liability limits for bodily injury or death contained within the policy. The selection of limits or rejection of coverage by a named insured or applicant on a form approved by the director is valid for all insureds under the policy. The offer need not be made in the

event of the reinstatement of a lapsed policy or the transfer, substitution, modification or renewal of an existing policy.[1] (Emphasis added). Section 20–259.01(B) contained a virtually identical provision concerning UIM coverage.

¶ 11 This statute, like all other Arizona insurance statutes, is incorporated into every policy issued to an Arizona insured. *Ins. Co. of N. Am. v. Superior Court,* 166 Ariz. 82, 85, 800 P.2d 585, 588 (1990). When an insurer fails to comply with A.R.S. § 20–259.01, the appropriate remedy is to impose UM and UIM coverage in an amount equal to the bodily injury liability limits of the policy. *Id.* at 85–86, 800 P.2d at 588–89.

¶ 12 The lynchpin of this case is the interpretation of the term "written notice" in A.R.S. § 20–259.01(A) and (B). Progressive contends that the requirement that an offer of UM/UIM motorist insurance in limits equal to those of liability coverage be provided by "written notice" should be interpreted "flexibly" in light of new technologies and business models in the insurance industry that enable consumers to purchase insurance either through the Internet or toll-free telephone numbers. According to Progressive, these trends support its argument that the statutorily required notice need not necessarily be in writing; rather the intent of the statute is satisfied by the electronic recording of a telephone conversation such as occurred here.

¶ 13 Progressive's argument turns accepted principles of statutory interpretation on their head. Although the goal of statutory interpretation is to determine legislative intent, *In re Estate of Winn,* 214 Ariz. 149, 151, ¶ 8, 150 P.3d 236, 238 (2007), we do so by following the "cornerstone" principle that the "best and most reliable index of a statute's meaning is its language, and when the language is clear and unequivocal it is determinative of the statute's construction." *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). We interpret a statute contrary to its plain meaning "only if necessary to effectuate the legislature's clearly expressed contrary intent or to avoid an absurd result that the legislature could not in any event have intended." *Ariz. Dep't of Revenue v. Gen. Motors Acceptance Corp.,* 188 Ariz. 441, 444, 937 P.2d 363, 366 (App. 1996).

¶ 14 Section 20–259.01 does not define "written." The general definition statute, A.R.S. § 1–215(46) (2002 & Supp.2009), defines "writing" only as "includes printing." Words in statutes are given "their usual and commonly understood meaning unless the legislature clearly intended a different meaning." *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990). As commonly understood, the term "writing" does not encompass an electronic recording of a telephone conversation. *See Black's Law Dictionary* 1108 (6th ed. 1991) ("In the most general sense of the word, 'writing' denotes a document, whether manuscript or printed, as opposed to mere spoken words."). Progressive points out that "writing" is specifically defined in other unrelated contexts as including an electronic recording. *See, e.g.,* Ariz. R. Evid. 1001(1). We presume, however, that had the legislature intended that the term "written notice" include electronic voice recordings, it would have said so. Therefore, the plain meaning of "written notice" requires that the offer be communicated in writing.[2]

¶ 15 Progressive nonetheless argues that, as a matter of policy, we should construe the requirement of written notice broadly to permit oral notifications that are electronically

---

1. At issue in this case is a renewal of an existing policy. For a renewal to excuse the absence of a written offer, the policy must be properly issued in the first instance. *Estate of Ball v. Am. Motorists Ins. Co.,* 181 Ariz. 124, 127 n. 3, 888 P.2d 1311, 1314 n. 3 (1995).

2. We likewise find unavailing Progressive's claim that the recorded telephone conversation qualifies as a written notice in light of (1) the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. §§ 7001 to 7006 (2000) (E-

SIGN); and (2) the Arizona Electronic Transaction Act, A.R.S. §§ 44–7001 to –7051 (AETA) (2003 & Supp.2008). Even if the electronic recording at issue qualifies as a "writing" in other contexts, neither it nor any other type of written notice was provided to the insured. Here, because the only notice Progressive extended to the insured was oral, it failed to satisfy A.R.S. § 20–259.01's express requirement of a "written notice."

recorded because doing so satisfies the purpose of the UMA, which is "to guarantee that responsible drivers will have an opportunity to protect themselves and their loved ones as they would others." *Ormsbee v. Allstate Ins. Co.*, 176 Ariz. 109, 112, 859 P.2d 732, 735 (1993). We decline to do so.

¶ 16 There is nothing in the legislative history of the UMA that supports a clearly expressed legislative intent that the term "written notice" be interpreted as requiring something different than *actual* written notice. As the superior court observed, the ability to record telephone conversations is not a recent innovation. The technology was available prior to 1981 when the requirement of written notice was first added and digital recording became available at least by 1982. *See* http://home.intekom.com/restore/History Recording.html (last accessed May 4, 2010). Notwithstanding this recording option, the Arizona Legislature enacted a written notice requirement and re-enacted it without change.[3] Progressive's argument thus supplies no reason to depart from the text of the UMA.

¶ 17 Nor can it be said that a literal interpretation of "written notice" leads to an absurd result or otherwise frustrates the legislature's intent. Quite the contrary. An oral notification obviously cannot be read and does not provide the same opportunity for review as does a written notice, and the insured is therefore less likely to comprehend the significance of what is being offered if he does not receive the offer in writing. *See Giley v. Liberty Mut. Fire Ins. Co.*, 168 Ariz. 306, 306–07, 812 P.2d 1124, 1124–25 (App.1991) (rejecting claim that agent's act of orally describing notice and obtaining in-

sured's signature on a form kept by agent satisfied the "make available" and "by written notice offer" terms in A.R.S. § 20–259.01). Here, Progressive kept the recording in its files and did not provide it to Thompson or Giant as a written notice. Indeed, Thompson received nothing to memorialize the oral offer's communication to him, not a recording, a letter, an e-mail, or a receipt.

¶ 18 Although the recording provides reliable evidence of what was said in the pertinent conversation, Progressive did not satisfy the statutory requirement that a "written notice" of the offer be provided. This omission results in an expansion of Giant's UM coverage by operation of law. *See Estate of Ball*, 181 Ariz. at 127, 888 P.2d at 1314 (refusing to create a waiver exception to A.R.S. § 20–259.01(B): "The statutory requirement of a written offer is absolute on its face.").

## CONCLUSION

¶ 19 We therefore affirm the grant of summary judgment to the Estate.

CONCURRING: SHELDON H. WEISBERG, Presiding Judge and JOHN C. GEMMILL, Judge.

**3.** The Arizona Legislature enacted A.R.S. § 20–259.01 in 1965. 1965 Ariz. Sess. Laws, ch. 34, § 1. In 1981, it amended the statute to require insurers to automatically include UM coverage of $15,000 in every policy and to notify the insured in writing that he could purchase up to the limits of the insured's liability coverage. 1981 Ariz. Sess. Laws, ch. 224, § 1. The Legislature again amended the statute in 1993 to eliminate the requirement that all liability policies include UM coverage. 1993 Ariz. Sess. Laws, ch. 1, § 3 (5th Spec. Sess). "However, in exchange for eliminating the coverage as compulsory, insurers were required to 'make available ... and by written notice offer' UM and UIM coverage in

limits 'not less than the liability limits for bodily injury or death contained within the policy.'" Note, *Legislative Review S.B. 1445—The Legislature's Attempt To Reverse Judicial Treatment Of Uninsured And Underinsured Motorist Coverage In Arizona*, 30 Ariz. St. L.J. 469, 478 (Summer 1998) (citing 1993 Ariz. Sess. Laws, ch. 1, § 3). Between 1996 and 2003, the Arizona Legislature has repeatedly amended A.R.S. § 20–259.01 but has left the written notice provision unchanged. *See* 1996 Ariz. Sess. Laws, ch. 164, § 1; 1997 Ariz. Sess. Laws, ch. 1, § 39; 1997 Ariz. Sess. Laws, ch. 87, § 1; 1997 Ariz. Sess. Laws, ch. 125, § 1; 1998 Ariz. Sess. Laws, ch. 288, § 2; 2003 Ariz. Sess. Laws, ch. 86, § 1.